# United States District Court
## For The District of Utah, Central Division

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08-CV-895-WFD |
| | ) | |
| 29,122.5 Square Feet of Land in Salt Lake City, Salt Lake County, State of Utah; Shubrick Building, L.L.C., Brighton Bank; Anchor Investments Company, Port O' Call, Inc..; et al.; and any Unknown Other Owners. | ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER DENYING DEFENDANTS' MOTION TO STRIKE

This matter comes before the Court on a motion by Defendants Shubrick Building, L.L.C., Anchor Investments Company, and Port O' Call, Inc. to strike portions of the Affidavit of Alan J. Camp submitted by the United States in support of its Motion for Immediate Delivery of Possession of Condemned Property. The Court, having considered Defendants' Motion, Plaintiff's response thereto, and the Camp Affidavit itself, FINDS and ORDERS:

### I.  Introduction

At issue here are various elements of the Affidavit of Alan Camp, who is the

current GSA project manager for the expansion of the Frank E. Moss United States Courthouse in Salt Lake City, Utah.  Defendants object to various portions of his affidavit on the grounds that they are either not based on personal knowledge, constitute inadmissible hearsay, or are purely conclusory or speculative in nature.

## II.  Statements Allegedly Not Based on Personal Knowledge

Defendants assert that two paragraphs in the Camp Affidavit are not based on personal knowledge and should accordingly be stricken.  *See* Fed. R. Evid. 602; *see also Argo v. Blue Cross & Blue Shield of Kansas*, 452 F.3d 1193, 1200 (10th Cir. 1996) (refusing to consider affidavits not based on personal knowledge at the summary judgment phase due to Rule 56's clear contrary requirement).  Camp Affidavit Paragraph 6 discusses the historical background behind the decision to expand the Moss courthouse.  Camp Affidavit Paragraph 7 discusses various delays in the progress of the expansion, alleging that a portion of the delay resulted from a "change in the project direction in 2003" to include the land on which the Shubrick Building sits.  Defendant asserts that both Paragraph 6 and 7 are based on events which occurred prior to the affiant's participation in the project.

However, it is clear from the United States' Memorandum in Opposition, as well as Mr. Camp's testimony in open court on January 7, 2009, that Mr. Camp was involved in the project from an early date.  He served as the GSA Project Manager in charge of the Prospectus Development Study for the project as early as

1993, and was also involved in the GSA's Property Development working group before he was finally assigned as the overall project manager three years ago. Consequently, it is clear that Mr. Camp does, in fact, possess personal knowledge regarding the events described in Paragraphs 6 and 7.

### III.  Statements Allegedly Constituting Hearsay

Defendants allege that Camp Affidavit Paragraph 13, which describes "growing judicial concerns" regarding the inadequacies of the existing courthouse, and asserts that "Utah's federal judiciary and Senators have communicated that they are anxious to avoid further delays" constitutes inadmissible hearsay. Defendants specifically challenge as hearsay the alleged communications by Utah's federal judiciary and Senators. However, it is apparent that these statements are not being offered for their truth and thus are not objectionable. Further, the first portion of Paragraph 13, which recites the reasons for the expansion do not constitute statements made by persons other than the declarant, and as they are clearly based on knowledge developed by the affiant during his tenure on this project, cannot be stricken.

### IV.  Statements Allegedly Conclusory or Speculative in Nature

Finally, Defendants assert that Camp Affidavits Paragraph 8, 9, 10, 11, 13, and 14 are unsupported speculation or conjecture. These paragraphs deal with the professed urgency of the project; the need to complete pre-construction activities on

schedule to be eligible for construction funds; the number of jobs which the project is expected to generate; the expected timing for receipt of construction funding; and the expected consequences of any delay in pre-construction activities, including projected cost increases.

It is apparent, both from the government's memorandum, as well as from Mr. Camp's January 7, 2009 testimony before this Court, however, that the information contained in these paragraphs is actually based either on Mr. Camp's long experience in GSA construction projects, or in nuances specific to this project. Far from unsupported conjecture, it appears that Mr. Camp's affidavit rests on a firm foundation, and should not be stricken.

## V. Conclusion

Having reviewed the affidavit in its entirety, the Court finds Defendants objections without merit. It clear that Mr. Camp has a long history with this project, and with GSA construction projects generally. He is well-versed in the vagaries of this project, including the GSA's reasons for initiating it, the pitfalls that could occur if the GSA is not granted immediate possession, etc. Consequently, it appears that far from unsupported conjecture, the statements contained in the affidavit are actually based on personal knowledge. Further those few elements of the affidavit which are asserted to be hearsay are either clearly not admitted for their truth or do not constitute third party statements. For the foregoing reasons, Defendant's Motion to Strike must be, and

hereby is, DENIED in its entirety.

DATED this 9th day of January, 2009.

                                              Honorable William F. Downes
                                              Chief United States District Judge
                                              Sitting by Special Designation